```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


DEMETRIUS EWING                              CIVIL ACTION

VERSUS                                       NO. 10-4146

EDWARD T. OLSEN, ET AL.                      SECTION: "F" (5)
```

### REPORT AND RECOMMENDATION

Plaintiff, Demetrius Ewing, is a prisoner currently incarcerated in the Phelps Correctional Center, DeQuincy, Louisiana. The instant action, however, concerns the treatment, specifically, the medical treatment, he received while incarcerated in the Jefferson Parish Correctional Center ("JPCC), Gretna, Louisiana. Named as defendants are Jean Llovet, a registered nurse who is the Director of Clinical Services at JPCC, James Dibble, a licensed practical nurse employed at JPCC, Jefferson Parish Sheriff Newell Norman, and Jefferson Parish Captain Edward Olsen. This matter is presently before the Court pursuant to a motion to dismiss (rec. doc. 30) filed on behalf of defendants, Jean Llovet and James Dibble, along with plaintiff's memorandum in opposition (doc. 41) to defendants' motion to dismiss.

When considering a defendant's motion to dismiss under Fed.R.Civ.P. 12(b)(6), a court must accept as true factual allegations in the complaint and construe all reasonable inferences in the plaintiff's favor. Leatherman v. Tarrant County Narcotics Intelligence & Coord. Unit, 507 U.S. 163, 164 (1993). However, in a situation such as this where, in connection with a motion to dismiss under 12(b)(6), matters outside of the pleadings are presented to and not excluded by the court, the court must convert the 12(b)(6) motion into a motion for summary judgment. Further, in the interest of fairness, all parties are to be given a reasonable opportunity to present all material relevant to a summary judgment motion. Fed.R.Civ.P. 12(b).

Pursuant to this Court's August 11, 2011 Order (rec. doc. 47), plaintiff was advised: "[B]ecause defendants present matters outside of the complaint for the Court's consideration, the motion [to dismiss] will be treated as one for summary judgment." Plaintiff was provided until August 26, 2011, to file a memorandum in opposition to defendants' converted motion for summary judgment. Petitioner, however, rather than filing a second opposition memorandum, having filed his first opposition (rec. doc. 41) on June 9, 2011, filed a motion for an extension of time to file an additional opposition memorandum which this Court denied.

2

### I. STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law.  <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 248 (1986).  No genuine issue of material fact exists if a rational trier of fact could not find for the nonmoving party based on the evidence presented.  <u>National Ass'n of Gov't Employees v. City Pub. Serv. Bd.</u>, 40 F.3d 698, 712 (5th Cir.1994).

To withstand a properly supported motion, the nonmoving party who bears the burden of proof at trial must come forward with evidence to support the essential elements of his claim.  <u>Id</u>., citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 321-23 (1986).  "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." <u>Celotex Corp.</u>, 477 U.S. at 323.

**II. ANALYSIS**

Plaintiff sets forth the following allegations in his complaint (rec. doc. 7). On July 22, 2010, plaintiff was "feeling very ill" and sought emergency medical care. In response, the "med pass" nurse informed plaintiff to execute a sick call request which plaintiff did.

On July 24, 2010, plaintiff again sought medical treatment, this time informing the "med pass" nurse that his "sickness had worsen [sic]". The nurse informed that because they were "short on doctors", plaintiff would have to "wait a while" before he could be seen by a physician. Plaintiff, apparently not satisfied with the nurse's response, executed on that same date a grievance form complaining about his "illness and being neglected."

On August 5, 2010, plaintiff filled out a second grievance, making "another attempt to receive medical treatment". Plaintiff also sought to receive the medications that a physician prescribed for him during his incarceration in Orleans Parish Prison.

On August 10, 2010, plaintiff again requested emergency medical care, complaining that his blood pressure was high and that he was throwing up a mixture of blood and vomit. Approximately five hours later, a nurse checked his blood pressure, allegedly stating that it was "kind of high". No medication was dispensed.

On August 11, 2010, plaintiff went to sick call where the interviewing nurse noticed no documentation in plaintiff's file reflecting that he had been throwing up vomit and blood. Additionally, there was no evidence that any one had attempted to contact Orleans Parish Prison to ascertain the medication which plaintiff had earlier been prescribed.

On that same date, August 11, 2010, plaintiff received notice that his grievance had been "refused". Since then, "plaintiff has submitted repeated sick call requests", but to no avail.

On September 10, 2010, plaintiff was unable to stand due to a swollen right leg and foot. As a result, plaintiff requested emergency medical care and was seen by a nurse who, rather than instructing plaintiff how to reduce the swelling, informed that emergency medical requests were to be made when an inmate was "dying" or "bleeding to death".

Defendants contend, and plaintiff does not dispute, that plaintiff was a pretrial detainee at the time the above-described incidents occurred. (Rec. doc. 30, p. 1). However, whether plaintiff was a pretrial detainee or a convicted inmate, the standard of liability is the same for the alleged episodic acts or omissions of JPCC medical personnel in failing to heed plaintiff's medical complaints. The Fifth Circuit, in Hare v. City of Corinth,

5

74 F.3d 633, 650 (5th Cir.1996), held:

> "(1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk."

Severin v. Hunter, 2007 WL 1592976, *5 (E.D. La. 2007), quoting Hare, supra.

In Estelle v. Gamble, 429 U.S. 97, 104 (1976), the Supreme Court established that a convicted inmate may succeed on a claim for damages under 42 U.S.C. §1983 for inadequate medical care only if he demonstrates that prison officials have been "deliberately indifferent" to his "serious medical needs". "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994). The Farmer definition applies to medical claims. Reeves v. Collins, 27 F.3d 174, 176 (5th Cir.1994).

Plaintiff must satisfy two requirements to demonstrate that defendants violated his constitutional rights. "First, the

deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." <u>Farmer</u>, 511 U.S. at 834 (quotation omitted). Thus, plaintiff must show deliberate indifference to his serious medical needs to satisfy this prong. <u>Wilson v. Seiter</u>, 501 U.S. 294, 297 (1991); <u>Mendoza v. Lynaugh</u>, 989 F.2d 191, 193 (5th Cir. 1993).

Next, plaintiff must establish that defendants possessed a culpable state of mind. <u>Farmer</u>, 511 U.S. at 838, <u>citing</u> <u>Wilson</u>, 501 U.S. at 298. A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Id</u>. at 837. "Mere negligence or a failure to act reasonably is not enough. The officer must have the subjective intent to cause harm." <u>Mace v. City of Palestine</u>, 333 F.3d 621, 626 (5th Cir. 2003). If the court finds that one of the components of the test is not met, it need not address the other component. <u>Davis v. Scott</u>, 157 F.3d 1003, 1005 (5th Cir.2003).

In the instant matter, plaintiff has clearly failed to satisfy his burden of proof. Assuming <u>arguendo</u> that plaintiff's sickness

7

arising from his alleged high blood pressure and his right leg and foot pain constitute serious medical needs, he has failed to show the requisite deliberate indifference on the part of medical personnel who filed the current motion, specifically, Llovet and Dibble.

A review of plaintiff's pertinent medical records, attached to defendants' motion (rec. doc. 30), reflect that during plaintiff's July 18, 2010 intake medical screening, the only "current medical problem" listed was "htn" or hypertension. (Rec. doc. 30, exhibit A). As a result, a "Provider Protocol" form was executed instructing that plaintiff's blood pressure was to be regularly checked. (Rec. doc. 30, exhibit B). Pursuant to that directive, plaintiff's blood pressure was checked weekly through August 14, 2010, and was found to be stable. (Rec. doc. 30, exhibit C).[1]

Plaintiff's medical records further reflect that plaintiff was examined on August 10, 2010, in response to his complaint of chest pain; however, the examining medical official noted that plaintiff was unable "to describe any areas ... where the chest pain was occurring." Nevertheless, plaintiff's vital signs were checked and were found to be within the normal range. It was during this

---

[1] The only week plaintiff's blood pressure was not checked during this period was the week of July 31, 2010, when there was "no answer" from plaintiff when the nurse went to check his pressure.

8

examination that plaintiff advised that he had been having high blood pressure for seven years. As such, the decision was made to monitor plaintiff's blood pressure status. Plaintiff further advised, during his August 10, 2010 examination, that he had been taking blood pressure medication, but his medication was "taken from me in Intake Booking." However, an inquiry to "Property" revealed that plaintiff, upon booking, had no medication on his person. (Rec. doc. 30, exhibit E).

On August 11 and August 12, 2010, plaintiff was examined by medical personnel in response to complaints of athlete's foot and a bite to his left ear. Plaintiff was provided with medication for his ear and foot and, pursuant to a vital sign check, his blood pressure was found to be stable. (Rec. doc. 30, exhibits E and F).

On August 31, 2010, a physician's assistant reviewed plaintiff's blood pressure protocol which was established during plaintiff's inmate screening. The physician's assistant noted that plaintiff's blood pressure had been stable during the course of monitoring and plaintiff had not been on any medication during that time period. As such, the decision was made to discontinue plaintiff's blood pressure protocol. (Rec. doc. 30, exhibit E).

Plaintiff was again examined by medical personnel on September 8, 2010, in connection with his September 5, 2010 sick call

9

request, complaining that he had been experiencing head pain for two weeks due to his high blood pressure. (Rec. doc. 30, exhibits E and G). In response, plaintiff was referred to a physician's assistant who examined plaintiff on September 13, 2010, noting plaintiff's assertion that "[e]verything is good, I'm straight." (Rec. doc. 30, exhibit E). A check of plaintiff's vital signs, including his blood pressure, revealed no abnormalities.

On September 17, 2010, plaintiff was examined by medical personnel in connection with his complaint of pain in his right foot and leg. The medical examiner observed that plaintiff had no swelling, but the area was tender. Plaintiff was prescribed Percogesic, a pain medication, to be taken twice a day for a seven-day period. (Rec. doc. 30, exhibit E). On September 23, 2010, plaintiff was seen at the chronic care clinic where it was noted that plaintiff could possibly have a heel spur on his right foot. (Rec. doc. 30, exhibit H). On October 8, 2010, plaintiff, during a sick call examination, was noted to be suffering from chronic right leg pain and was prescribed more pain medication, specifically, Motrin, to be taken twice a day for a month. (Rec. doc. 30, exhibit I).

Based upon the above, it is clear that plaintiff received constitutionally adequate medical attention while incarcerated at

JPCC.  Medical personnel responded to his complaints, monitored his blood pressure when placed on notice, at his initial screening, that he suffered from high blood pressure, and provided him with pain medication in connection with his complaints of leg and foot pain.  While plaintiff may be unhappy with the efficacy of his treatment, he has been unspecific as to why these particular defendants have caused him damage or what the extent of that damage might be.

Plaintiff has made no direct allegations against Dibble in either his complaint or his response to the pending motion.  As to Llovet, plaintiff makes only one conclusory allegation in his complaint.  Specifically, plaintiff has alleged that, because the jail grievance staff brings matters to the attention of those individuals responsible for the matters set forth in the grievance, Llovet must have been advised of plaintiff's problems because Llovet "is responsible for medical care generally."  There must be a causal connection between the acts or omissions of a given defendant and harm caused to a plaintiff.  Lozano v. Smith, 718 F.2d 756 (5th Cir. 1983); Douthit v. Jones, 641 F.2d 345 (5th Cir. 1981).  That causal link is missing here.  Plaintiff has not established that he had personal dealings with either defendant.  And, if Llovet functions in a supervisory capacity, that fact, per se, will not be sufficient to render Llovet responsible for the

omissions of someone under Llovet's supervision.

Plaintiff is clearly dissatisfied with the wait between when he submitted his sick call requests and when he was seen by medical personnel. In his objection (rec. doc. 41) to defendants' motion, plaintiff complains that on several occasions, "after writing requests to see a JPCC nurse, [he] had to wait a week or more in order to receive medical attention." Plaintiff opines that while his "needs were not so serious that a delay of a day or so would have been constitutionally intolerable, ... the long delays he endured ... were the product of deliberate indifference." (Rec. doc. 41, p. 7 (footnote omitted)).

It is well-established that "mere delay or a mere gap in receiving care is not in and of itself a constitutional violation. Mendoza v. Lynaugh, 989 F.2d. 191, 193 (5th Cir. 1993); Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990); Simons v. Clemens, 752 F.2d 1053, 1056 (5th Cir. 1985). Regardless of the length of delay, plaintiff at a minimum must show deliberate indifference to serious medical needs. Wilson, 501 U.S. at 298. The delays from when plaintiff submitted a sick call form to when he received medical attention did not cause "a life-long handicap or permanent loss" sufficient to constitute a serious medical need for constitutional purposes. See Hill v. Dekalb Reg'l Youth Detention Ctr., 40 F.3d

1176, 1188 (11th Cir. 1994), citing Monmouth County v. Lanzaro, 834 F.2d 326, 347 (3rd Cir. 1987) ("Where the delay [in medical care] results in an inmate's suffering 'a life-long handicap or permanent loss, the medical need is serious.'"). No such permanent loss has resulted from the delay that has been alleged in this case. Nor, for that matter, has plaintiff documented even temporary damage from the delay experienced.  Accordingly;

## RECOMMENDATION

It is hereby **RECOMMENDED** that the motion for summary judgment filed on behalf of defendants, Jean Llovet and James Dibble, be **GRANTED.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. §636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996)(en

banc).[2]

New Orleans, Louisiana, this 2nd day of September, 2011.

                                                ALMA L. CHASEZ
                                       UNITED STATES MAGISTRATE JUDGE

---

[2]<u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.