```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


DEMETRIUS EWING                               CIVIL ACTION

VERSUS                                        NO. 10-4146

EDWARD T. OLSEN, ET AL.                       SECTION: "F" (5)
```

                        REPORT AND RECOMMENDATION

Plaintiff, Demetrius Ewing, is a prisoner currently incarcerated in the Phelps Correctional Center, DeQuincy, Louisiana. The instant action, however, concerns alleged constitutional violations during his incarceration in the Jefferson Parish Correctional Center ("JPCC"), Gretna, Louisiana. Named as defendants are: Edward Olsen, a captain with the Jefferson Parish Sheriff's Department; Jean Llovet, a registered nurse employed as the Director of Clinical Services at JPCC; James Dibble, a licensed practical nurse employed at JPCC; and, Jefferson Parish Sheriff Newell Norman.

Plaintiff's complaint, filed pursuant to 42 U.S.C. §1983, is two-fold. The main focus is plaintiff's claim that he received inadequate medical treatment. Plaintiff enumerates the instances

in which he received sub-standard medical care at the hands of JPCC medical personnel, in particular, Jean Llovet and James Dibble.[1] Both Llovet and Dibble have been dismissed as party defendants pursuant to a motion for summary judgment filed on their behalf. (See rec. docs. 53 and 54).

The second part of plaintiff's §1983 action concerns defendant Olsen's handling of two administrative grievances. With respect to plaintiff's first grievance, Number 1007155, regarding his inadequate medical care, plaintiff provides that Olsen's response "violated [his] rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution." (See rec. doc. 7, plaintiff's complaint, Section V., p. 4). With regard to plaintiff's second grievance, Number 1008075, involving the lack of food he received during Ramadan, plaintiff asserts that Olsen's response "clearly shows Olsen ordering the Correctional Staff Officers to harass me by serching [sic] through my property and person everyday for food." (See rec. doc. 7, plaintiff's complaint, Statement of Claim, p. 5 of 5).

This matter is before the Court pursuant to defendant Olsen's motion for summary judgment. (Rec. doc. 42). Based upon the following, the undersigned recommends that Olsen's motion be

---

[1] Plaintiff's allegations in this regard are detailed in the Court's Report and Recommendation (rec. doc. 53).

granted.

**I. STANDARD OF REVIEW**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). No genuine issue of material fact exists if a rational trier of fact could not find for the nonmoving party based on the evidence presented. National Ass'n of Gov't Employees v. City Pub. Serv. Bd., 40 F.3d 698, 712 (5th Cir.1994).

To withstand a properly supported motion, the nonmoving party who bears the burden of proof at trial must come forward with evidence to support the essential elements of his claim. Id., citing Celotex Corp. v. Catrett, 477 U.S. 317, 321-23 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." Celotex Corp., 477 U.S. at 323.

**II. ANALYSIS**

**A. Grievance Number 1007155 Concerning Inadequate Medical Care**

In support of his motion for summary judgment, Olsen has submitted documents reflecting that plaintiff, on July 24, 2010, filed an inmate grievance form. In this grievance, plaintiff provided: "The medical treatment is a threat to my health and I fear for my life because I suffers [sic] from high blood pressure and high colesteral [sic] in my blood and I am forced to eat unhealthy foods such as pork & salty portions." (See rec. doc. 42, exhibit A).

On July 28, 2010, Dibble submitted a response to plaintiff's grievance. Dibble provided a lengthy explanation as to why plaintiff's grievance was "unfounded". (See Rec. doc. 42, exhibit B).

Upon plaintiff's receipt of Dibble's response, he sought further review. On August 13, 2010, Llovet provided a step two response, providing reasons to support her determination that plaintiff's grievance was "unfounded". (Rec. doc. 42, exhibit C).

Following his receipt of Llovet's response, plaintiff proceeded to step three, the final step in the review process. On August 25, 2010, Olsen determined that plaintiff's grievance was "unfounded". In support of his decision, Olsen provided:

> After reviewing your grievance, the response previously provided by the Medical staff, and conducting a review of your charts with the medical staff, I concur with the

4

>    Responses provided by R.N. Llovet and L.P.N. Dibble.
>
>    Your complaints have been documented by the medical staff and they have followed through with the Procedures that they would for any inmate. The only time that your blood pressure was recorded as "higher than normal", your blood pressure was still within a "NORMAL" range, as defined within the medical community, thus you required no further medical treatment.
>
>    In addition, the meal plan provided to the inmates has been approved by a dietician and a physician, [a]nd has been determined to be nutritious and sufficient for an average aged, size male inmate with [t]he activity levels found within this facility.

(Rec. doc. 42, exhibit D).

### B. Grievance Number 1008075 Concerning Food Received During Ramadan

A review of the attached documents[2] reflects that on August 15, 2010, plaintiff filed an inmate grievance form providing:

>    On 8-12-10 I signed up for Ramadan (fasting). On 8-13-10 I only received 2 meals - breakfast & dinner. On 8-14-10 at 4:40 a.m. I received only cold oatmeal on my tray and the rest of the inmate population had eggs, sausage, brown potatoes, bread, orange [juice] and milk. On 8-15-10 Dep. Scott and Dep. Kissinger stated to me that I have to eat 2 times a day because I am on the Ramadan list and then I requested to Dep. Scott and Dep. Kissinger that I want to be taken off the list ... and they both told me that I can't get off the list. I also stated to Dep. Scott and Dep. Kissinger that I never did sign my signature to be put on the list to begin with so how can I be forced to stay on the list. I then requested to

---

[2]Plaintiff's claim regarding his second grievance, Number 1008075, was not addressed in Olsen's motion for summary judgment. Accordingly, the Court obtained the documentation related to this grievance and has attached the documentation to its Report and Recommendation.

speak with a ranking officer and Dep. Scott stated to me, "Take your lick," and walked off. ... All I ask for is 3 hot meals a day like all the rest of the inmate population recieves [sic] and not the iced [sic] cold breakfast that's been in the cooler overnight, and not the diabeties [sic] snacks for dinner.

On August 20, 2010, Captain Olsen responded to plaintiff's grievance, determining it to be "unfounded". In support of his determination, Captain Olsen provided:

> It is apparent you have a misconception of what should transpire in the Correctional Facility with regard[] to Ramadan. Muslims observing Ramadan are suppose[] to fast between sun-up and sun-down. ... As such the JPCC serves a breakfast before sun-up, no lunch [and] a dinner meal which has a double portion of the entree and a snack bag to be eaten later in the night. A dietician and a doctor have reviewed the program and have found the fasting diet to be nutrionally [sic] adequate for an average age/size male with the activity levels of the inmates.
>
> In addition it is against JPCC policy and procedure to store any perishable food items.... You have already requested to be removed from the Ramadan list and the request has been approved. This was your choice because you are unhappy with the procedures in place, you were not asked to stop observing Ramadan nor were you coerced.
>
> Your complaint about the oatmeal being cold was forwarded to the kitchen for monitoring. It appears that you are an isolated case however since you were the only one who complained of receiving cold food on that morning. By your grievance it appears that you did not report that the food was cold, and that your real complaint was not that the oatmeal was cold, but that you aren't receiving the same meal as the rest of the inmate population that is not observing Ramadan.

(See attached documentation).

Thereafter, Olsen advised of the following action: "Inmate

was removed from the Ramadan List by his request.... Correctional Staff have been advised to observe inmate Ewing to ensure that he is not hoarding ... perishable food items which is a violation of JPCC policy and creates a health/sanitation problem." (See attached documentation).[3]

### C. Applicable Law/Conclusion

A prison administrative grievance proceeding does not give rise to a constitutionally protected liberty interest unless the restrictions imposed as a result of the proceeding constitute "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," Sandin v. Conner, 515 U.S. 472, 484 (1995), or said restrictions will inevitably affect the duration of the prisoner's confinement. Id. at 484.

Plaintiff's first grievance, Number 1007155, resulted in plaintiff's failure to receive the medical treatment he desired. Plaintiff's second grievance, Number 1008075, involved alleged

---

[3] On August 19, petitioner, not having received the above response from Captain Olsen, submitted an inmate request form providing: "Can you please take me off the Ramadan list." In response, Captain Olsen informed: "Your request to be removed from the Ramadan list is approved. A copy of this response will also be forwarded to the kitchen." Captain Olsen further advised: "Please be aware that if your intent is to save food from the normal meals during the day so that you may eat them during [the] hours between sundown and sunup, you will be in violation of JPCC policy regarding hoarding perishable food and will face disciplinary action." (See attached documentation).

harassment by virtue of JPCC officials searching him and his property, checking to make sure he was not hoarding food from daytime meals in order to consume it during the hours between sundown and sunup. No incidents of such harassment have been documented by plaintiff.

The above results did not impose "atypical and significant hardship ... in relation to the ordinary incidents of prison life" and did not affect the duration of plaintiff's confinement. Therefore, plaintiff, in connection with the two administrative grievance proceedings at issue, did not suffer a violation of his constitutional rights. Accordingly;

## RECOMMENDATION

It is hereby **RECOMMENDED** that the motion for summary judgment filed on behalf of defendant, Edward Olsen, be **GRANTED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. §636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996)(*en*

banc).[4]

     New Orleans, Louisiana, this  1st  day of  November , 2011.

                                       ALMA L. CHASEZ
                            UNITED STATES MAGISTRATE JUDGE

---

[4] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.